1   Andrew R. Stern, Esq. (SBN 78318)
    andystern1000@gmail.com
2   31659 Sea Level Dr.
    Malibu, California 90265
3   Telephone: (310) 457-1723
    Fax: (310) 457-6304
4
5   Attorney for Plaintiff
6
7
8               UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11  ALEXANDER STERN,                    )   CASE NO.
                                        )   CV11-08413 PSG (MRWx)
12              Plaintiff,              )
                                        )   COMPLAINT FOR DAMAGES,
13  v.                                  )   DECLARATORY AND INJUNCTIVE
                                        )   RELIEF
14  THE REGENTS OF THE                  )
    UNIVERSITY OF CALIFORNIA;           )   DEMAND FOR JURY TRIAL
15  GARY WHITE, in his official and     )
    personal capacity as Director of the )
16  Disabled Students Program at the    )
    University of California, Santa     )
17  Barbara;  WANDA THOMAS, in her      )
    official and personal capacity as   )
18  Support Services Coordinator at the )
    University of California, Santa     )
19  Barbara;  JON SNYDER, in his        )
    official and personal capacity as   )
20  Department Chair at the University  )
    of California, Santa Barbara;       )
21  VALENTINA PADULA, in her            )
    official and personal capacity as   )
22  Coordinator of the Italian Language )
    Program at the University of        )
23  California, Santa Barbara;          )
    CAMILLA FIORINA, in her official    )
24  and personal capacity as Lecturer at )
    the University of California, Santa  )
25  Barbara;  and DOES 1 through 10     )
    inclusive,                          )
26                                      )
                Defendants.             )
27  _____ )
28

                          -1-
                       COMPLAINT

Plaintiff complains of Defendants and alleges herein as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12188, and 28 U.S.C. § 1343 for Plaintiff's claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq.; and the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983.  This Court has original jurisdiction over Plaintiff's request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the California Unruh Civil Rights Act (California Civil Code §§ 51, et seq.) and the California Fair Employment and Housing Act (California Government Code §§ 12900, et seq.).

## INTRODUCTION

3. This action seeks to redress and put an end to systemic, overt, and egregious civil rights violations committed by Defendants against Plaintiff.  Plaintiff is an undergraduate student and job applicant at the University of California, Santa Barbara ("UCSB"), a division of Defendant the Regents of the University of California.  Plaintiff has been denied employment explicitly, orally and in writing, because of his disabilities.  Shockingly, the "Disabled

Students Program", a department within UCSB dedicated to advocating for the rights of and providing services to the disabled on the UCSB campus, has an express policy of refusing employment to disabled students who apply for their student employee positions.  In addition to actively denying employment orally and in writing, all references to these student employee positions (which must be applied for through an Internet website) are actively *deleted* for all students registered as disabled with UCSB.  This active deletion makes all references to employment applications disappear from the Internet interface accessed by anyone who even indicates the possibility that he or she may request disability related services.  To make matters even worse, when a student so much as hints he or she might have a disability by pressing a single button indicating a desire to request disability related services, that person's account is actively *purged* of all references to student employee positions. This deletion is particularly nefarious given that many would-be applicants might never even know such employment opportunities exist inasmuch as once any indication is made that a person may seek disability services, no references to employment will ever appear for that person on their Disabled Students Program Internet account interface going forward.  This purging represents a profoundly hostile practice of discrimination against all persons who so much as press one button which reveals a possible disability.

-3-

COMPLAINT

Secondly, Plaintiff was denied the disability accommodation of fifty percent additional time for completion of exams unambiguously approved by the Disabled Students Program by Defendant Camilla Fiorina.  Thirdly, Plaintiff was promised a routinely offered "review and recommendation" regarding his Italian class performance but said promise was repudiated specifically (and in writing) because he had requested documents in support of his position that the disabled, including Plaintiff, were being treated unfairly.  In good faith Plaintiff tried for approximately five months to secure compliance with the law, with respect to both his employment and academic grievances, but Defendants have simply disregarded and ignored his repeated requests.

**VENUE**

4.  Venue is proper in the Central District pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the district and all of the events giving rise to the claims made in this complaint occurred and continue to occur in this judicial district.

**PARTIES**

5.  Plaintiff is a qualified individual with learning disabilities.  He has been denied employment and academic benefits because he is disabled.  Plaintiff has also been denied reasonable disability accommodations approved by the

department charged by UCSB with approving such accommodations.
Plaintiff is a resident of Santa Barbara County and Los Angeles County.

6. Defendant the Regents of the University of California is a public university operated by the State of California with multiple campuses across the state, including the Santa Barbara campus which Plaintiff attends.

7. Defendant Gary White is the Director of UCSB's Disabled Students Program. In his role as the head of the Disabled Students Program, he makes policy decisions such as the policy that student employees must not be disabled. He is sued in his official and personal capacity.

8. Defendant Wanda Thomas is the Support Services Coordinator at UCSB's Disabled Students Program. According to the Disabled Students Program website as of October 8, 2011, she "supervises the Administrative Staff and oversees student note takers, readers and test proctors." She refused to consider Plaintiff's application to be a student proctor because he is disabled. She is sued in her official and personal capacity.

9. Defendant Jon Snyder is the chair of UCSB's department of French and Italian. He directed Defendant Valentina Padula to renege on her promise to review Plaintiff's Italian course work and make a recommendation regarding his grade. Said review and recommendation is a benefit she routinely offered to the non-disabled in all Italian language courses. Defendant Jon Snyder is sued in his official and personal capacity.

10. Defendant Valentina Padula is Coordinator of UCSB's Italian Language Program. She promised to provide the aforementioned review and recommendation yet subsequently denied this benefit to Plaintiff explicitly because he requested documents pertaining to disability discrimination. She is sued in her official and personal capacity.

11. Defendant Camilla Fiorina is a Lecturer at UCSB. She was Plaintiff's instructor and denied the reasonable accommodations approved for him by the Disabled Students Program including, without limitation, fifty percent extended time on examinations. She is sued in her official and personal capacity.

12. Plaintiff does not presently know the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive. Plaintiff will seek leave of court to amend this complaint to allege said Defendants' true names and capacities as soon as Plaintiff ascertains them.

## FACTS

13. Plaintiff is a qualified individual with disabilities.

14. Plaintiff's disabilities substantially limit major life activities such as learning.

15. Plaintiff has submitted records of impairment that were accepted by Defendant the Regents of the University of California as proving he is a qualified individual with disabilities.

16. Plaintiff is regarded by the Defendants as having impairments that substantially limit major life activities such as learning.

17. Defendant Regents of the University of California has interpreted their non-discrimination responsibilities under federal law to require that, "The University may not discriminate against any qualified individual with a disability, on the basis of disability, in employment under any program, service, or activity, including any program, service, or activity that employs students with disabilities." *See* University of California Policy 144.00 entitled "Guidelines Applying to Nondiscrimination on the Basis of Disability."

18. UCSB's Disabled Students Program hires students to serve as "note takers, readers and test proctors." *See* http://dsp.sa.ucsb.edu/StaffContactList/index.aspx (as of October 9, 2011).

19. A student test proctor is a student who monitors other student(s) during an academic examination to ensure that they do not cheat or commit other acts of academic dishonesty.

20. Student test proctors set their own working hours and schedules by accepting or rejecting the many and various work opportunities presented to said test proctors by the Disabled Students Program.

-7-

21. Said work opportunities are numerous and desirable as they are comprised of requests for test proctors at many and various times throughout the days, weeks, and years.

22. Plaintiff wished and wishes to be a test proctor.

23. Students wishing to be employed by the Disabled Students Program in one of the several student employee positions such as note takers and proctors must do so on the Disabled Students Program's Internet website. See Exhibit A (an e-mail to all students in a particular class regarding an employment opportunity at the Disabled Students Program).

24. If a non-disabled student visits the Disabled Students Program's Internet website, he or she is presented with several employment opportunities. See Exhibit B (said website as viewed by a non-disabled student).

25. The Disabled Students Program actively deletes and destroys all reference to, and applications for, student employee positions for students registered with UCSB as having disability, including Plaintiff. See Exhibit C (the Disabled Students Program's website as viewed by Plaintiff).

26. **The Disabled Students Program so aggressively discriminates against the disabled that any student who presses a single button (which initiates the process to request disability related accommodations) is immediately flagged by the Disabled Students Program and all reference to employment opportunities and employment applications is removed. See**

**Exhibit D (the Disabled Students Program's website as viewed by the**

**non-disabled student from Exhibit B thirteen days after pressing the**

**button which indicated she might have a disability).**

27. The Disabled Students Program has erected insurmountable barriers which

preclude disabled students from applying for employment at the Disabled

Students Program.

28. On April 29, 2011 Plaintiff e-mailed Defendant Wanda Thomas and asked,

"are DSP [Disabled Students Program] students ever allowed to be proctors?"

29. Defendant Wanda Thomas failed to reply to Plaintiff's first e-mail.

30. On May 6, 2011 Plaintiff sent the same question via e-mail to Defendant

Wanda Thomas.

**31. On May 9, 2011 Defendant Wanda Thomas stated via e-mail, "No, our**

**policy is that you cannot be employed for a service you are eligible for!"**

**(note the mention of mere eligibility for disability services and the**

**exclamation point).**

32. On June 2, 2011 Plaintiff e-mailed Defendant Gary White to request an in-

person meeting to discuss the Disabled Students Program's policy of

discriminating against the disabled in employment and to discuss concerns

regarding denial of approved accommodations in his Italian class.

33. On June 7, 2011 Plaintiff and Defendant Gary White met in-person to discuss

Plaintiff's aforementioned concerns.

34. Defendant Gary White admitted, with respect to Plaintiff's employment discrimination concerns, that Plaintiff "was not the first person to complain" about the policy.

35. Defendant Gary White expressly confirmed that, pursuant to his department's policy, no disabled student will be offered, or allowed to apply for, a student employee position at the Disabled Students Program.

36. Plaintiff told Defendant Gary White that such discrimination was blatantly unlawful and mentioned both the Americans with Disabilities Act of 1990 and International Bhd. of Teamsters v. United States, 431 U. S. 324 (1977).

37. Defendant Gary White maintained that refusing to hire disabled students for student employee positions was an acceptable policy and would remain in effect.

38. Defendant Gary White and Defendant Wanda Thomas, in the course of their jobs at the Disabled Students Program, are continuously made aware of the legal rights that the disabled possess under federal and state law and are responsible for educating others within the university regarding such rights.

39. Accordingly, Defendant Gary White and Defendant Wanda Thomas were aware of the state of the law yet conspiratorially continued and continue to discriminate on the basis of disability in employment.

40. During Plaintiff's June 7, 2011 meeting with Defendant Gary White, Plaintiff asked whether it would be equally permissible to refuse to hire all students registered as women with the university.

41. Outrageously, Defendant Gary White stated that his goal was to "minimize the potential for liability" and that hiring the disabled represented an unnecessary liability.

42. Defendant Gary White asserted that students who received services from the Disabled Students Program might not get the full benefits of these services if the Disabled Students Program hired the disabled and those disabled employees were unable to perform.

43. Defendant Gary White expressed a concern that the disabled often take longer to perform certain tasks which might cause them to miss work as a result of taking longer to complete the task(s) they were doing prior to their employment appointments.

44. For example, Defendant Gary White expressed to Plaintiff a concern that disabled students, if allowed to be proctors, might obligate themselves to a proctoring job at a particular time yet fail to show up to the appropriate location because they might be too busy with their own time-consuming (due to disability related extra time) exams.

45. Test proctors are allowed to accept or reject any proctoring jobs and can therefore schedule their work around their own exams and commitments in the exact same manner as the non-disabled.

46. Plaintiff asked Defendant Gary White "What if a movie theater wanted to minimize liability and refused to hire the disabled on the grounds their disabilities might cause them to miss work?  What if a hospital wanted to minimize liability and refused to hire the disabled on the grounds that their disabilities might cause them to miss work?"

47. Despite Plaintiff's various good-faith attempts at persuading Defendant Gary White, he ultimately remained unconvinced that his conduct was inappropriate and the Disabled Students Program still continues to refuse to hire the disabled for their student positions.

48. The Disabled Students Program is a governmental entity and theoretically well informed on persons with disabilities.

49. The notion that this agency, of all agencies, would blatantly and systemically refuse to hire the disabled to "minimize the potential for liability" can only lead disabled students, including Plaintiff, to fear that they are unemployable and seen as liabilities to society.

50. The Disabled Students Program's systemic discrimination against the disabled is especially upsetting and cause for significant mental and emotional anguish to Plaintiff.

51. According to the July 26, 2010 Executive Order entitled Increasing Federal Employment of Individuals with Disabilities, "Approximately 54 million Americans are living with a disability. . . Yet Americans with disabilities have an employment rate far lower than that of Americans without disabilities. . ."

52. It is imperative that divisions of the State of California, including UCSB's Disabled Students Program, not inflate this statistic by categorically banning all persons who might possibly have a disability from student employee positions.

53. Plaintiff has been approved by the Disabled Students Program to receive fifty percent extensions of time to complete each and all of his exams at UCSB.

54. Said accommodation means if the general population of the class (i.e. non-accommodated, non-disabled students) gets 10 minutes to complete an exam, Plaintiff should get fifteen minutes to complete the same exam. Likewise, if the general population of the class gets 30 minutes to complete an exam, Plaintiff should get 45 minutes.

55. Defendant Camilla Fiorina was aware of this approved accommodation as the Disabled Students Program informs instructors and/or their supervisors of the approved accommodations, and their statutory basis, for any disabled students in their classes.

56. Plaintiff conferred with Defendant Camilla Fiorina multiple times about his accommodations and offered to clarify, or to ask the Disabled Students Program to clarify, any or all of his accommodations.

57. Defendant Camilla Fiorina circumvented Plaintiff's accommodations multiple times in the following manner (numbers 58 through 62):

58. She would announce a "pop quiz" (an exam the students were not aware they would be taking).

59. The pop quiz would be taken at the end of class with a small stated amount of time, e.g. ten minutes, to complete.

60. She would state that all students (including both the disabled and non-disabled) could have extra time (such as five minutes) to complete the exam.

61. This extra time was offered to all students and was not an accommodation granted to Plaintiff pursuant to the relevant disabilities law.

62. When Plaintiff asked for the extra time to complete his exams (i.e. the 50 percent extension of time compared to the non-disabled), Defendant Camilla Fiorina insisted that he had already used up his extra time (referring to the so-called "extra time" Defendant Camilla Fiorina offered to all students regardless of disability).

63. When Plaintiff privately met with Defendant Camilla Fiorina to discuss her refusal to provide his disability accommodation of extra time, she stated that

she had concerns about the fairness of the exams if Plaintiff were to receive more time than any other student.

64. This interpretation by Defendant Camilla Fiorina would transform the reasonable accommodations mandate under state and federal law into a discretionary favor.

65. Specifically, any instructor could make all exams last a specified period and then offer to everyone whatever extra time remained in the class session. If a disabled person then asked for his or her reasonable accommodation of extra time, the instructor would always be able to say something to the effect of "you had much more extra time than you were allowed."

66. On May 13, 2011 Plaintiff asked his disabilities specialist at the Disabled Students Program, Claudia Batty, to confirm the above interpretation that disability related extra time is based upon how long the non-disabled are actually allowed to take an exam, not empty statements of time that are subsequently modified.

67. Ms. Claudia Batty affirmed Plaintiff's interpretation of the extra time accommodation as discussed above, in an e-mail dated May 16, 2011.

68. During Plaintiff's June 7, 2011 meeting with Defendant Gary White mentioned above, Plaintiff implored Defendant Gary White to speak with Defendant Camilla Fiorina regarding the unacceptability and illegality of circumventing approved accommodations.